IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

WILLIAM B.,

                Plaintiff,

          v.                              Civil Action No.
                                            5:21-CV-0189 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF

AMDURSKY, PELKY LAW FIRM      AMY CHADWICK, ESQ.
26 East Oneida Street
Oswego, NY 13126

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          LUIS PERE, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on August 19, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is AFFIRMED.

3)    The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:     August 26, 2022
           Syracuse, NY

3

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
WILLIAM B.,

                    Plaintiff,

vs.                                        5:21-CV-189

COMMISSIONER OF SOCIAL SECURITY,


                    Defendant.

------------------------------------------------------x
```

**TRANSCRIPT OF DECISION**

**BEFORE THE HONORABLE DAVID E. PEEBLES**

held on August 19, 2022

James Hanley Federal Building, Syracuse, New York


<u>APPEARANCES</u>  (by telephone)

```
For Plaintiff:     AMDURSKY, PELKY LAW FIRM
                   26 East Oneida Street
                   Oswego, NY 13126
                     BY:  AMY CHADWICK, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                   25 New Sudbury Street
                   Boston, MA 21235
                     BY:  LUIS PERE, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

2

1          THE COURT:  Let me begin by thanking both counsel

2     for excellent and spirited presentations.

3          The background of this matter is as follows.

4          Plaintiff has commenced a proceeding pursuant to

5     42, United States Code, Sections 405(g) and 1383(c)(3) to

6     challenge an adverse determination of the Commissioner of

7     Social Security finding that he was not eligible for the

8     benefits for which he applied.

9          Plaintiff was born in December of 1977 and is

10    currently 44 years of age.  He was 41 years old at the

11    alleged onset of disability, that is, the amended onset date

12    of March 7, 2019.

13         Plaintiff resides in Williamstown with his wife and

14    four children, who by my calculation are approximately ages

15    four, seven, ten and eleven years.  Plaintiff stands 5-foot

16    9-inches in height and weighs 190 pounds approximately.

17         Plaintiff has a twelfth grade education.  He

18    attended Vernon-Verona-Sherrill Central School District where

19    he was in a special education program and he received an IEP

20    diploma.  He attended a BOCES diesel and small engine repair

21    course, but states that he did not pass the course.  And

22    while in school he repeated one grade.

23         Plaintiff has a driver's license and, in fact,

24    states that he likes to drive.  Plaintiff worked from 2007 to

25    2010 as a temporary laborer in various positions and as a

1   farmhand from 2011 to 2016.

2          Mentally, plaintiff suffers from several conditions

3   that have been variously diagnosed, including schizoaffective

4   disorder, antisocial personality disorder, learning disorder,

5   and ADHD.  He suffers from anxiety and anger issues.

6          Physically, plaintiff alleges that he suffers from

7   asthma and allergies.  Plaintiff has received treatment from

8   various sources, including Physician's Assistant Amy McCune

9   and the Oswego Hospital Behavioral Services where he has been

10  in therapy every other week.  There are also two evaluations,

11  psychological evaluations in the record and we'll discuss

12  those in a few moments.

13         Plaintiff has a fairly wide range of activities of

14  daily living.  He is able to dress, bathe, groom, cook, help

15  with laundry, sweep and mop.  He drives.  He engages in

16  repair of machinery and cars.  He can mow, weed.  He attends

17  picnics with his family.  He took his family to a water park.

18  He attends church.  He takes his sons to appointments.  He

19  watches television, walks, listens to the radio, cares for

20  pets and co-parents his four children.

21         Plaintiff is a smoker and has a not insignificant

22  criminal history, including a period of incarceration.

23         Procedurally, plaintiff applied for Title II and

24  Title XVI benefits on April 10, 2019, alleging an onset date

25  of January 1, 2017, although that was later amended to

4

March 7, 2019.  There are prior denials apparently in the
record, including one from March 11, 2019 based upon a
decision of Administrative Law Judge John Ramos.

In support of his application, plaintiff alleges
ADHD, learning disorder, depression, asthma, allergies,
impulse disorder, and schizoaffective disorder as conditions
that limit his ability to perform work functions.

A hearing was conducted on September 8, 2020, with
the vocational expert by Administrative Law Judge Jeremy
Eldred on September 23, 2020.  ALJ Eldred issued an
unfavorable decision which became a final determination of
the Agency on January 26, 2021, when the Social Security
Administration Appeals Council denied plaintiff's application
for review.  This action was commenced on February 18, 2021,
and is timely.

In his decision, ALJ Eldred applied the familiar
five-step sequential test for determining disability, first
noting that plaintiff was last insured on September 30, 2021.

At step one, he concluded plaintiff had not engaged
in substantial gainful activity since the amended onset date.

At step two, the ALJ concluded that plaintiff does
suffer from severe impairments and impose more than minimal
limitations on his ability to perform work functions,
including schizoaffective disorder, antisocial personality
disorder, learning disorder, attention deficit/hyperactivity

5

1  disorder, or ADHD.

2         At step three, ALJ Eldred concluded that

3  plaintiff's conditions do not meet or medically equal any of

4  the listed presumptively disabling conditions set forth in

5  the Commissioner's regulations, specifically considering

6  listings 12.03, 12.04, 12.08 and 12.11.

7         The ALJ next concluded that notwithstanding his

8  conditions, plaintiff retains the ability to perform a full

9  range of work at all exertional levels, except as follows:

10 He can understand, remember, and carry out only simple and

11 routine tasks.  He can concentrate, persist, and maintain

12 pace in a work setting to the extent necessary to perform

13 only simple and routine tasks.  The claimant can interact no

14 more than occasionally with supervisors or co-workers, and is

15 unable to do a job that requires interaction with the public.

16 He can also appropriately deal with ordinary changes in an

17 unskilled occupation that involves only simple and routine

18 tasks.

19         Applying that RFC finding at step four, the

20 Administrative Law Judge concluded that plaintiff is capable

21 of performing his past relevant work as a farmhand, as that

22 position is generally performed, and therefore concluded that

23 he is not disabled.

24         As the parties know, the Court's function at this

25 juncture is extremely limited to determining whether correct

1  legal principles were applied and whether the result is

2  supported by substantial evidence, which is defined as such

3  relevant evidence as a reasonable mind would find sufficient

4  to support a fact.  The Second Circuit has noted, including

5  in *Brault versus Social Security Administration Commissioner*,

6  683 F.3d 443 from 2012, that this is an extremely deferential

7  standard.  Under the substantial evidence standard, once an

8  ALJ finds a fact, that fact can be rejected only if a

9  reasonable fact-finder would have to conclude otherwise.

10         Plaintiff has raised three essential contentions in

11 this case.  First, he argues that the Administrative Law

12 Judge failed to properly evaluate the opinions of Dr. Andy

13 Lopez Williams and Dr. Michael Boucher, both of whom

14 conducted psychological evaluations of the plaintiff.

15         Secondly, he argues that the Administrative Law

16 Judge should have concluded that plaintiff's conditions meet

17 or equal the listings, and specifically challenges his

18 failure to separately address the four domains in the B

19 criteria and erred in finding less than moderate limitations

20 in those areas.

21         And third, he argues that the residual functional

22 capacity is not supported because it is not based on any

23 competent medical opinions and there is no explanation for

24 distinguishing between interaction with different groups, and

25 also he challenges the failure to include any limitation

1    regarding being off task due to his ADHD.

2           The first argument, of course, as I said, centers

3    upon medical opinions, or I should say reports rather than

4    calling them medical opinions, of Dr. Boucher, who rendered a

5    report on May 11, 2019.  It appears at pages 283 to 287 of

6    the Administrative Transcript.  And Dr. Andy Lopez Williams,

7    who authored a report, a psychological report on October 13,

8    2017.  That appears at pages 665 to 668 of the Administrative

9    Transcript.

10          Because of the date of filing of plaintiff's

11   application, this case is subject to the new amended

12   regulations which took effect for applications filed after

13   March of 2017.  Under those regulations, the ALJ does not

14   defer or give any specific evidentiary weight, including

15   controlling weight, to any medical opinions or prior

16   administrative medical findings, including those from a

17   treating source.  Instead, the ALJ must consider those

18   opinions using the relevant factors which are not terribly

19   different than the factors under the old regulations, but

20   must particularly address supportability and consistency, and

21   must articulate how persuasive each medical opinion was

22   found, and explain how he or she considered the

23   supportability and consistency of those opinions.

24          The ALJ must also consider other factors that are

25   set out but does not have to explain how he or she considered

those factors as appropriate in each case.  And, of course,
where there are conflicting medical opinions in the record,
it is incumbent on the Administrative Law Judge to reconcile
those opinions and any conflicts.  *Veino v. Barnhart*, 312
F.3d 578, Second Circuit, 2002.  It is not the Court's
function to weigh those other than to determine whether the
correct legal principles were applied and the weight given is
supported under the regulations.

          Dr. Lopez Williams in his 2017 evaluation conducted
various testings and found plaintiff meets the criteria for
ADHD Combined Presentation Severe, and issued some
recommendations.

          1.  William is recommended to explore individual,
insight oriented therapy.

          2.  Given the severity of William's attention
impairment, a combined psychologic and pharmacologic approach
is recommended, if medically appropriate.

          3.  Due to difficulty maintaining and securing
stable employment, William should consider seeking services
from ACCES-VR in order to secure occupational supports and
services.  He would likely benefit from job coaching and
accommodations to address his executive and attention
deficits.

          The opinion of Michael Boucher from May of 2019 was
based on a psychological evaluation.  The findings of

1   Dr. Boucher were as follows.  There are currently significant

2   limitations on consumer's academic abilities in the area of

3   reading comprehension and on his capacity to sustain focused

4   attention and concentration.  Other limitations are noted in

5   the areas of recent recall memory, verbal reasoning, and

6   motor speed and coordination.

7          The recommendations include the following.  The

8   consumer appears to have the intellectual resources needed to

9   benefit from supported job finding and retention services if

10  the work is of a hands-on type of a relatively repetitive

11  nature that does not require frequently changing task demands

12  and it does not overwhelm his still somewhat limited stress

13  and frustration tolerances.  He should try to work and/or

14  study in non-distracting settings.  He may learn new material

15  better if he takes three (about ten minutes) breaks about

16  every 30 to 45 minutes to get up and move around than if he

17  tries to sit still and work on the same material for

18  prolonged periods of time.

19         The Commissioner has argued that these do not

20  constitute medical opinions.  Under 20 C.F.R. Section

21  404.1513(a)(2), and there is a similar regulation that

22  applies to Title XVI claims, a medical opinion is a statement

23  from a medical source about what you can still do despite

24  your impairment and whether you have one or more impairment

25  related limitations or restrictions in the following

1    abilities.  And one is essentially your ability to perform

2    physical demands of work activities; two is your ability to

3    perform mental demands of work activities.

4         I agree with the Commissioner that these opinions,

5    these reports do not constitute medical opinions that were

6    required to be analyzed under the new regulations.  They

7    don't contain specific functional limitations.  One requires

8    at least extrapolation from the statements of those

9    psychologists to translate to a functional limitation.  But

10   even if they are medical opinions, I do not see anything that

11   undercuts the residual functional capacity.  The

12   recommendations of both are just that; they're

13   recommendations, they're not functional limitations.  Words

14   like may benefit from, these are recommendations only and not

15   statements that plaintiff must have these accommodations in

16   an RFC.  The distinction is drawn in *Nolcox v. Berryhill*,

17   2019 WL 1331582, from the Northern District of Ohio, 2019, a

18   case cited by the Commissioner.

19        I also note that the reports are not consistent

20   with plaintiff's activities of daily living and treatment

21   notes.  I've reviewed the treatment notes and plaintiff is

22   almost consistently referred to as cooperative, respectful,

23   and they show improvement through treatment and medication.

24        I will acknowledge that the Administrative Law

25   Judge's discussion on page 19 of the Administrative

1    Transcript is less than illuminating when it comes to the

2    reports of Dr. Lopez Williams and Dr. Boucher.  He only

3    states, "Any such conclusions that are inconsistent with the

4    residual functional capacity established above are

5    unpersuasive, because they are inconsistent with the evidence

6    referenced above regarding the claimant's activities of daily

7    living and positive response to treatment."  As I indicated,

8    I'm not sure at all that those reports are inconsistent with

9    the residual functional capacity finding.

10          So I conclude, in any event, there is no error in

11   connection with consideration of the reports of those two

12   psychologists.

13          The second argument relates to the listed

14   presumptively disabling conditions of the Commissioner's

15   regulations.  Of course, to meet or equal one of those

16   listings, all criteria set out must be met.  Plaintiff

17   challenges consideration of listings 12.03, schizophrenia;

18   12.04, depression; 12.08, impulse control issues and

19   personality issues; and 12.11, neuro-developmental disorders.

20   All require consideration of the so-called B criteria.  There

21   are four domains set out, and the plaintiff must have either

22   one extreme limitation in one of those four domains or two

23   marked.

24          The ALJ concluded that there were moderate

25   limitations in understanding, remembering, or applying

1   information, moderate limitations in interacting with others,

2   moderate difficulties in concentrating, persisting or

3   maintaining pace, and moderate difficulties in adapting or

4   managing oneself.  It is true that unlike some of the

5   Administrative Law Judge's decisions that I've seen, they're

6   not broken out and discussed separately; they are lumped into

7   one paragraph on page 16 of the Administrative Transcript.

8   However, the substantial evidence supports that conclusion

9   when you consider Dr. Shapiro's consultative report, which

10  shows no more than mild limitations in any area, and the

11  several state agency consultants who reviewed the plaintiff's

12  records and also found no more than mild limitations.

13          The conclusion is also supported by the plaintiff's

14  activities of daily living and response to treatment.  I

15  don't find any duty to separately carve out those four areas

16  and discuss them separately.  Plaintiff's arguments are based

17  primarily on the reports of Dr. Lopez Williams, Dr. Boucher,

18  and Physician's Assistant Amy McCune, but PA McCune's opinion

19  was found unpersuasive and plaintiff hasn't challenged that

20  finding.  And as I indicated previously, Dr. Lopez Williams

21  and Dr. Boucher did not identify specific marked limitations.

22          So I don't find any error and I cannot say that a

23  reasonable fact-finder would have to have found that

24  plaintiff meets the B criteria by having two marked or one

25  extreme limitation among the four domains.

13

1          The third argument concerns the residual functional

2   capacity.  A claimant's RFC, of course, represents a range of

3   tasks that he is capable of performing notwithstanding his

4   impairments.  Ordinarily it represents a claimant's maximum

5   ability to perform sustained work activities in an ordinary

6   setting on a regular and continuing basis, meaning eight

7   hours a day for five days a week, or an equivalent schedule.

8          An RFC determination is informed by consideration

9   of all of the relevant medical and other evidence.  In this

10  case ALJ Eldred crafted a very restrictive when it comes to

11  the mental component of the RFC.  The RFC in my view is

12  supported by the opinion of Dr. Shapiro.  It's supported by

13  the state agencies, although both were found rather

14  unpersuasive.  That was because the Administrative Law Judge

15  concluded based upon the entirety of the record, including

16  plaintiff's testimony, that he was more limited.  But even

17  though those were rejected for that reason, they certainly

18  can still support the RFC.

19          Again, the activities of daily living of the

20  plaintiff were relied on, and the fact that records,

21  treatment records show improvement with treatment and

22  medication.  He relied also on plaintiff's testimony that he

23  had looked for work but it was his criminal record that made

24  it difficult to find employment.  These are all proper

25  considerations.  Plaintiff argues that there is no medical

opinion that precisely tracks the residual functional

capacity, but there is no duty or obligation on the part of

the ALJ to track any one particular opinion.  *Moxham v.*

*Commissioner of Social Security*, 2018 WL 1175210, from the

Northern District of New York, 2018.

I will acknowledge that in many respects, including

this one, the Administrative Law Judge's decision is not a

model of clarity.  He did not explain why he concluded

plaintiff can have occasional contact with supervisors and

co-workers but no contact with the public.  But as I said

before, Dr. Shapiro didn't find any limitations in this area.

The treatment notes consistently refer to plaintiff

as respectful, cooperative.  The state agency consultants,

including at 73 and 92, found no social limitations.  And

Dr. Boucher himself found, "intact ability to interact

appropriately with others in settings akin to the testing

situation," at 286.  So the fact that there is a more

limiting provision in the RFC dealing with interaction, it's

harmless error, it does not undermine the decision.

So I find the residual functional capacity is

supported by substantial evidence.  I will say that Attorney

Chadwick did a commendable job at raising arguments in

support of her client's position and argued well;

unfortunately, however, I find that I must award judgment on

the pleadings to the defendant and order dismissal of

1   plaintiff's complaint.

2          Thank you both.  I hope you have a wonderful rest

3   of your summer.

4                    *            *            *

5

6          C E R T I F I C A T I O N

7

8          I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

9   Realtime Court Reporter, in and for the United States

10  District Court for the Northern District of New York,

11  do hereby certify that pursuant to Section 753, Title 28,

12  United States Code, that the foregoing is a true and correct

13  transcript of the stenographically reported proceedings held

14  in the above-entitled matter and that the transcript page

15  format is in conformance with the regulations of the

16  Judicial Conference of the United States.

17

18

19

20          _Eileen McDonough_
            _____

21          EILEEN MCDONOUGH, RPR, CRR
            Federal Official Court Reporter

22

23

24

25